UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WORLD FUEL SERVICES, INC.,          )
                                    )
        Plaintiff,                  )
                                    )        Case No.  20-cv-07836
        v.                          )
                                    )        Judge Sharon Johnson Coleman
CITY OF CHICAGO,                    )
                                    )
        Defendant.                  )

MEMORANDUM OPINION AND ORDER

This case arises out of defendant City of Chicago's rejection of plaintiff World Fuel Services, Inc.'s 2020 bid for a fuel contract.  Plaintiff World Fuel Services, Inc. ("World Fuel") sued defendant City of Chicago ("City") for injunctive and declaratory relief from the alleged wrongful denial.  Before the Court is plaintiff's motion for preliminary injunction.  After considering the parties' briefing, exhibits, and oral arguments, plaintiff's motion for a preliminary injunction [6] is denied.

I.      Background

Defendant contracts with fuel suppliers to procure four types of fuel.  The fuel is used for various essential operations such as emergency services, streets and sanitation, airport operations, backup generators for City buildings and O'Hare runway lights, other City vehicles and equipment used for water, sewer, street, lighting, and traffic control, and utility repairs.  Plaintiff supplied fuel to defendant from 2009 to January 31, 2021, when its 2009 contracts expired (after multiple renewals by defendant).  On February 7, 2020, the City's Department of Procurement Services ("DPS") solicited bids for 2021 fuel contracts.  The solicitation required bidders make good faith efforts to have 25% Minority Business Enterprise ("MBE") participation in the contracts.  Bidders could satisfy the good faith requirement through one of three ways: (1) submit a plan identifying the

1

participating MBE, (2) request to waive or reduce the MBE goal, or (3) a combination of a plan and waiver request.  To satisfy the first method, the plan must use a MBE performing in its certified area of specialty and a Commercially Useful Function ("CUF").  A CUF is defined as:

> responsibility for the execution of a distinct element of the work of the contract, which is carried out by actually performing, managing, and supervising the work involved, evidencing the responsibilities and risks of a business owner such as negotiating the terms of (sub)contracts, taking on a financial risk commensurate with the contract or its subcontract, responsibility for acquiring the appropriate lines of credit and/or loans, or fulfilling responsibilities as a joint venture partner as described in the joint venture agreement.  (Compl. Ex. 2, pg. 2.)

On March 12, 2020, plaintiff submitted a bid proposing subcontractor Petromex, Inc. ("Petromex") as a MBE performing a CUF.  Another bidder, Colonial, proposed subcontractor Black Dog Petroleum LLC ("Black Dog") as a MBE performing a CUF.  During DPS's review of plaintiff's bid, it discovered that Petromex did not own the tanker trucks used to transport the fuel and were not delivering the fuel.  DPS learned that Petromex intended to use a sub-subcontractor firm to transport and deliver the fuel, even though plaintiff had not disclosed the sub-subcontractor in their plan as was required.  DPS further discovered that unbeknownst to the defendant, plaintiff had also used an undisclosed sub-subcontractor for transporting and delivering the fuel in the initial 2009 contracts.  Defendant informed plaintiff on March 30, 2020 that since Petromex did not own or lease the transporting trucks and was not unloading the fuel itself, it did not perform a CUF. Defendant instructed plaintiff to either find a replacement MBE or submit a waiver request.  After much discussion between the parties and plaintiff threatening legal action in an April 21, 2020 letter, defendant rejected plaintiff's bid as non-responsive on May 8, 2020.  Defendant awarded the 2021 fuel contracts to Colonial on May 21, 2020, before the close of pre-award protests on May 22, 2020. Plaintiff filed two pre-award protests on May 22, 2020 and two post-award protests on June 5, 2020, all of which were denied.

Since budget submissions for the following year are due each July, defendant immediately began working with the winning bidder, Colonial, on hedging agreements. Under these agreements, defendant commits to buying a specific amount of fuel from the supplier at a fixed price sometime in the future. Executing these agreements assists defendant in predicting fuel costs for the next year. On June 25, 2020, defendant executed hedges with Colonial for around 70% of its predicted fuel needs for February to December 2021 (plaintiff's contract expired January 31, 2021, so defendant obtained fuel from plaintiff until then). Defendant planned, as usual, to obtain the remaining 30% of fuel for 2021 through spot purchases (purchasing fuel at market price separately from the hedged amounts). Defendant also executed two more hedges with Colonial: one on November 10, 2020 for around 40% of predicted fuel needs for 2022 and another on February 9, 2021 for around 20% of predicted fuel needs for 2022. Plaintiff filed a complaint on December 31, 2020 challenging the City's denial of its bid and a motion for a temporary restraining order and/or preliminary injunction on January 27, 2021. The Court heard oral argument on the TRO motion on January 29, 2021. The same day, the Court denied the TRO motion and continued the preliminary injunction motion.

## II.     Legal Standard

A preliminary injunction is "an extraordinary remedy [that is] never awarded as of right." *Benisek v. Lamone*, ___ U.S.___, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. Natural Res. Def. Counsel, Inc.* 555 U.S. 7, 24 (2008)). A plaintiff seeking a preliminary injunction must first establish that he is likely to succeed on the merits, that there is no adequate remedy at law, and that he is likely to suffer irreparable harm absent preliminary relief. *Glossip v. Gross*, 576 U.S. 863, 135 S.Ct. 2726, 2736, 192 L.Ed 761 (2015); *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). For the likelihood of success on the merits element, the plaintiff must demonstrate "some" likelihood of success, not simply a "better than negligible" chance of success. *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020). "If the plaintiff fails to meet any of these threshold requirements, the

3

court 'must deny the injunction.'" *GEFT Outdoors*, 922 F.3d at 364 (citation omitted). If the plaintiff meets the threshold requirements, the court then balances the harm to plaintiff if the injunction is denied with the harm to the defendant if an injunction is granted. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). Ultimately, the moving party bears the burden of persuasion "by a clear showing." *Goodman v. Illinois Dep't of Fin. & Prof. Regulation*, 430 F.3d 432, 437 (7th Cir. 2005).

### III. Analysis

*Mandatory or Prohibitory Injunction*

The Court must first determine the type of injunction sought. Defendant argues that plaintiff seeks a mandatory injunction, which is an injunction requiring an affirmative act by the defendant and is sparingly issued. *See Mays*, 974 F.3d at 818. Plaintiff suggests that the injunction is not mandatory but seeks to restore the status quo, which is the last uncontested status before the dispute. *See Empire Indus. Inc. v. Winslyn Indus., LLC,* 327 F. Supp. 3d 1101, 1108 (N.D. Ill. 2018) (Kennelly, J.). Plaintiff claims that the status quo would be the time before the defendant wrongfully awarded the 2020 contracts to Colonial. Defendant disputes plaintiff's interpretation of the status quo, but fails to specifically argue what it believes the status quo to be.

Even so, the requested relief appears to require several affirmative acts by the defendant, which indicates a mandatory injunction. Plaintiff seeks an injunction that would (1) nullify the 2020 contracts and (2) either award contracts to plaintiff or require defendant re-bid the contracts. If the contracts were awarded to plaintiff, the parties would have to redraft the language of the contracts and execute hedging agreements or rely on daily spot purchases. If the defendant must re-bid the contracts, it would need to review the submitted bids and decide on a winning bidder. The defendant would also need to alter its bidding process by changing how it determines whether an MBE performs a CUF. The injunction would not simply prohibit defendant from buying fuel from

Colonial; it would require defendant to affirmatively act to change its bidding process and either draw up agreements with plaintiff, exercise emergency contracting authority, or re-bid the entire contract. Further, the injunction would give plaintiff the final relief it seeks in its complaint of voiding the 2020 contracts. An injunction that gives plaintiff much of the relief it seeks is disfavored and puts a higher burden on the plaintiff. *See Money v. Pritzker*, 453 F. Supp. 3d 1103, 117 (N.D. Ill. 2020) (Dow, J.).

*Irreparable Harm*

The Court next addresses whether plaintiff has met the threshold requirements of a preliminary injunction. Plaintiff relies heavily on *Keefe-Shea Joint Venture v. City of Evanston*, 332 Ill. App. 3d 163, 773 N.E.2d 1155 (1st Dist. 2002), an Illinois appellate court case, for most of its arguments. First, it argues that under *Keefe-Shea*, violating the right to a fair bidding process is an irreparable injury for which there is no adequate remedy. The complaint makes no mention of the Illinois law or statute defendant supposedly violated and the claims upon which plaintiff seeks declaratory and injunctive relief. *Keefe-Shea* is distinguishable and plaintiff fails to meet its burden under controlling federal law.

The Court agrees with defendant's arguments distinguishing *Keefe-Shea*. First, the losing bidder for the building construction contract in *Keefe-Shea* argued that the irreparable harm was that the plaintiff could not receive the contract if the winning bidder began work on the project. While plaintiff likely would not be able to obtain fuel contracts for this year, it could obtain fuel contracts for the next several years if it is successful at trial since fuel is an ongoing need. Second, the contract in *Keefe-Shea* was awarded to a non-responsive bidder, whereas the issue here is whether the losing bidder's bid was non-responsive. Plaintiff claims in its reply that this distinction is irrelevant because *Keefe-Shea* stands for the proposition that a municipality must award the contract to the lowest responsive and responsible bidder. Plaintiff's summary of the holding is a bit misleading. The *Keefe-*

*Shea* court expressly states that its holding was "based on a finding that [the winning bidder] did not comply with the MBE/WBE waiver requirements, which failure, under the express terms of the bid documents, makes the bid unresponsive." *Keefe-Shea*, 332 Ill. App. 3d at 175. Since the *Keefe-Shea* decision was based on the winning bid's non-responsiveness and plaintiff does not argue Colonial's bid was non-responsive,[1] *Keefe-Shea* is distinguishable. Further, the court on remand from the appellate court's decision in *Keefe-Shea* again denied preliminary injunction and the denial was upheld. *See Keefe-Shea Joint Venture v. City of Evanston*, 364 Ill.App.3d 48, 845 N.E.2d 689 (1st Dist. 2005).

Plaintiff also fails to argue the correct irreparable harm standard under federal law for preliminary injunctions. Plaintiff must show that absent a preliminary injunction, it *will* be irreparably harmed in the time before a final resolution can be reached. Plaintiff only argues that it has already been irreparably harmed by the violation of a right to a fair bidding process. Plaintiff seemingly attempts to correct this in its reply by stating in the balance of harms section that it will continue to be irreparably harmed by every fuel delivery from Colonial, but the Court cannot consider a new argument brought in a reply. Since plaintiff has not made a clear showing of irreparable harm, plaintiff has not met its burden of persuasion for a preliminary injunction. The Court will briefly analyze the remaining elements as encouraged by the Seventh Circuit. *See EnVerve, Inc. v. Unger Meat Co.*, 779 F. Supp. 2d 840, 845 (N.D. Ill. 2011) (Castillo, J.) (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States,* 549 F.3d 1079, 1087 (7th Cir. 2008)).

*Adequate Remedy at Law*

Plaintiff claims that there is no adequate remedy at law (1) for the violation of the right to a fair bidding process because unsuccessful bidders cannot recover lost profits and (2) for awarding

---

[1] Plaintiff also argues that this Court should infer impropriety in defendant's awarding of the contract to Colonial because of an investigation into Colonial's MBE subcontractor. If plaintiff believes there was actual impropriety, it should have included a fraud claim in its complaint. But it has neither included a fraud claim, sued the winning bidder, nor sued the MBE subcontractor it believes committed impropriety. Plaintiff's attempt to distract the Court with allegations of impropriety based on limited evidence is squarely rejected.

contracts before the deadline for plaintiff to file pre-award protests. In support of its first argument, plaintiff cites *Keefe-Shea* and *Gen. Elec. Co. v. Cnty. of Cook*, No. 00 C 6587, 2001 WL 417321 (N.D. Ill. March 5, 2001). The Court has already distinguished *Keefe-Shea* and the parties in *Gen. Elec.* did not dispute the lack of an adequate remedy at law. Defendant here *does* dispute whether there is an adequate remedy at law. Defendant claims that plaintiff has an adequate remedy at law by the corrective relief of nullifying the 2020 contracts and, citing *Fairplain Dev. Co. v. Freeman*, 512 F. Supp. 201 (N.D. Ill. 1981) (Flaum, J.), the ability to recover costs of preparing the bid. Defendant also notes that the "failure to discuss the adequacy of any remedy at law, together with its unconvincing claim of irreparable harm" is enough to deny an injunction, citing *Advanced Seal Tech., Inc. v. Perry*, 873 F. Supp. 1144 (N.D. Ill. 1995) (Pallmeyer, J.).

The Court is persuaded by *Fairplain*. While *Fairplain* refers to the recovery of damages in the context of the federal procurement process, the Court does not see why the same logic cannot apply to a municipality's procurement process and plaintiff does not attempt to distinguish it. Under *Fairplain*, plaintiff has an adequate remedy at law in the form of bid preparation costs. Plaintiff also has corrective relief in the form of nullifying the contracts. The harm claimed is violation of right to a fair bidding process; the remedy would be to re-bid, not automatically award the contracts to plaintiff. The Court also notes that an inadequate remedy at law "does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). Since plaintiff has not discussed the adequacy of bid costs as a remedy, has not convincingly argued corrective relief is an inadequate remedy, and has an unpersuasive claim of irreparable harm, the preliminary injunction is denied. *See Advanced Seal Tech.*, 873 F. Supp. at 1150.

On plaintiff's second point that there is no adequate remedy for awarding the contracts before the deadline for pre-award protests, plaintiff once again does not cite any caselaw and simply

argues that defendant would be more likely to fairly consider a protest before making its decision.

But defendant separately notes, and the Court agrees, that it attempted to work with plaintiff for far

longer than reasonably required. Defendant gave plaintiff the opportunity to amend its plan and

engaged in months-long discussions before finally rejecting plaintiff's proposal. Throughout 2020,

plaintiff had many opportunities to formally and informally protest and did so. The Court sees no

reason, and plaintiff offers no legal authority, for why defendant could not rely on plaintiff's

repeated refusal to cooperate and award the contracts before the pre-award protest deadline in the

interest of moving forward with procuring fuel and preparing budget information.

*Likelihood to Succeed on the Merits*

Arguments on this element highlight one significant issue; there is no underlying claim for

which to evaluate the likelihood of success. To succeed on a motion for preliminary injunction, a

plaintiff must show some likelihood of succeeding on the merits of the substantive underlying

claims. Here, plaintiff's complaint sets forth "claims" for declaratory judgment and injunctive relief.

However, these are only forms of relief and not independent causes of action. *Elward v. Electrolux*

*Home Prod., Inc.*, 214 F. Supp. 3d 701, 707-708 (N.D. Ill. 2016) (Lee, J.). The Court does not decide

this issue at this juncture since the ability to sue solely based on forms of relief has not yet been

briefed. Further, plaintiff incorrectly claims that they must simply show a better than negligible

chance of success on the merits of at least one of its claims. To the contrary, plaintiff must

demonstrate "some" likelihood of success, not simply a "better than negligible" chance of success.

*Mays*, 974 F.3d at 822.

Plaintiff claims that it is likely to succeed because under *Keefe-Shea*, an unsuccessful bidder in

a competitive bidding process can demonstrate a municipality violated a right to a fair bidding

process by showing that the rejection of the bid was wrong. Plaintiff argues that since rejection of

its bid was wrong, it is likely to succeed on its claim that defendant violated a right to a fair bidding

process. Defendant responds that it has broad discretion in determining the lowest responsive

bidder and in interpreting its own rules, citing to *Walsh/II In One Joint Venture III v. Metropolitan Water

Reclamation Dist. of Greater Chicago*, 389 Ill. App. 3d 138, 904 N.E.2d 1158 (1st Dist. 2009) and *Taylor v.

Police Bd. of City of Chicago*, 62 Ill. App. 3d 486, 378 N.E.2d 1160 (1st Dist. 1978).

The Court has already distinguished *Keefe-Shea* and plaintiff cites no other caselaw (save for a

case that is inapplicable since the parties agree defendant's bidding process was competitive).

Plaintiff points to defendant's past acceptance of Petromex as a MBE wholesaler for the past ten

years. But plaintiff did not disclose Petromex's sub-subcontractor for transporting fuel and

defendant would only have discovered this during its compliance check at the close of those

contracts this year. In the bidding process for the 2020 contracts, Petromex claimed 0% of its work

would be subcontracted. (*See* Dkt. 28-5, Jimenez Declaration at 89.) But now, the parties clearly

agree that Petromex's initial representation to the defendant was not true and Petromex would use a

sub-subcontractor for transporting fuel. Plaintiff also claims that Petromex satisfies the CUF

definition of executing a distinct element of work of the contract, citing to industry practice. Relying

on industry practice is not determinative, only a factor to consider. Again, plaintiff has not shown

why defendant is not entitled to discretion in interpreting its determination of a CUF and has not

made a clear showing of some likelihood of success.

*Balance of Harms*

Plaintiff claims that defendant will not be harmed if an injunction is granted because plaintiff

is a ready and able fuel supplier. Plaintiff's claims here are vague and do not assuage this Court's

concern that issuing an injunction could cause a fuel shortage. Plaintiff offers no evidence to

suggest there will not be even a single day delay, even though a single day delay could be

catastrophic. Plaintiff merely claims that there is no sworn statement by defendant that a disruption

will occur or that plaintiff is incapable of supplying fuel. But the burden of persuasion is on

plaintiff.  There is no sworn statement by plaintiff that there will be absolutely zero delay in fuel supply such that no critical infrastructure will be impacted.  Plaintiff also claims defendant would not suffer a monetary loss because under defendant's contract with Colonial, Colonial would reimburse it for price differentials and make the defendant whole.  If the injunction is granted and the 2020 contracts are nullified, it is unclear whether defendant would have a basis to ask Colonial for such reimbursement.  Further, plaintiff has not included Colonial as a defendant, so Colonial cannot defend its interests in this respect.

Defendant also notes that granting the injunction would require defendant violate the Municipal Purchasing Act because under state law, defendant cannot purchase goods without a contract.  Plaintiff claims that it would extend the original 2009 contracts, but has not convinced this Court that the violation of a right to a fair bidding process means the contracts must be awarded to plaintiff as opposed to another bidder.  There will necessarily be a lag between entry of an injunction and execution of contracts, resulting in either a fuel shortage or the defendant violating the MPA. This Court is not in the habit of requiring a municipality violate state law nor is it interested in disrupting critical services.

## IV.    Conclusion

Plaintiff has not met its burden of persuasion for a preliminary injunction.  This Court declines to interfere with defendant's business decisions at this juncture and require defendant to re-open bids, rush through a solicitation process that generally takes months, wreak havoc on the City's already precarious budget for 2021, and potentially disrupt critical fuel supply for even one day. Plaintiff's motion for preliminary injunction [5] is DENIED.  IT IS SO ORDERED.

Date: 4/19/2021                    Entered: _____

                                   SHARON JOHNSON COLEMAN
                                   United States District Court Judge

10